## IN THE UNTIED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| E.R. a minor child by next friend<br>   NAIESHA N. CRAY, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-1137-SLP |
| | ) | |
| KEVIN STITT, in his official capacity as | ) | |
|    Governor of the State of Oklahoma, and | ) | |
| JUSTIN BROWN, in his official capacity | ) | |
|    as Director of the Oklahoma Department | ) | |
|    of Human Services, et al., | ) | |
| | ) | |
| Defendants.[1] | ) | |

## O R D E R

Before the Court are motions by two of the eleven defendants in this action.

Defendant Governor Kevin Stitt, sued in his official capacity, filed a motion to dismiss

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Mot., Doc. No. 6.

Plaintiffs filed a response and Defendant Governor Stitt replied. *See* Resp., Doc. No. 14;

Reply, Doc. No. 16. In addition, Defendant Justin Brown, sued in his official capacity as

director of the Oklahoma Department of Human Services ("OKDHS"), filed a motion to

dismiss pursuant to Rules 12(b)(1) and 12(b)(6). *See* Mot., Doc. No. 9. Again, Plaintiffs

---

[1] Plaintiffs' lawsuit was filed against Mary Fallin in her then-official capacity as governor of the State of Oklahoma and against Ed Lake in his then-official capacity as director of the Oklahoma Department of Human Services. Governor Stitt has replaced Governor Fallin, and Mr. Brown has replaced Mr. Lake. Governor Stitt is therefore substituted for Governor Fallin, and Mr. Brown for Mr. Lake, pursuant to Federal Rule of Civil Procedure 25(d). All references herein are to Governor Stitt and Mr. Brown, regardless of whether filings and arguments were made by those persons or by Governor Fallin and Mr. Lake.

filed a response and Mr. Brown replied. *See* Resp., Doc. No. 15; Reply, Doc. No. 17.[2]

Both motions now are at issue.

## I.     Background[3]

Plaintiff Naiesha Nicole Cray is the mother of five minor children—all of whom

have been in the custody of the OKDHS since September 2017. Although the Court has

reviewed and considered all of Plaintiffs' factual assertions regarding the treatment of Ms.

Cray and the children while the latter were in OKDHS custody, the entirety of such

allegations need not be recounted here for the Court to decide the pending dismissal

motions. Among other allegations, Plaintiffs assert (i) that N.C. had trouble walking,

lacked balance, and frequently fell after being placed in a foster home, but she had no

difficulties with her gait before being removed from Ms. Cray's custody; (ii) that Ms. Cray

was "interrogated," "degraded, laughed at, [and] disrespected" during a family function

assessment session she was told to attend by the OKDHS; (iii) that the children were

unnecessarily separated from each other; (iv) that B.C. and K.C. were abused by their foster

---

[2] On May 29, 2019, Plaintiffs filed an affidavit indicating that they had "requested that [their attorney] file a stay in [this case] due to the severity of [the] case in state court[]," but that their counsel had not done so. Cray Aff., Doc. No. 21. Plaintiffs therefore indicated that they were going to retain substitute counsel. Subsequently, Plaintiffs filed a notice indicating that they were keeping their current counsel, not engaging new counsel. *See* Notice of Retraction, Doc. No. 23. As no motion seeking a stay is before it, the Court addresses the dismissal motions filed by Governor Stitt and Mr. Brown.

[3] The factual summary herein is taken from Plaintiffs' Complaint [Doc. No. 1] and accepted as true for the purpose of deciding the instant dismissal motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court has not considered factual assertions included in Plaintiffs' response briefs but not in their Complaint—e.g., that "Oklahoma's rate of maltreatment of children in foster care has been among the three worst in the nation . . . [f]or the past five years . . . and in some years[,] . . . the worst." Resp. 17, Doc. No. 14.

family, including being "kept in a room naked for hours," being "beaten with [a] belt, being "sexually abused by touching their genitals" and being "forc[ed] . . . to perform oral sex . . . [and] anally raped;" (v) that E.R. was not properly supervised while being transported by the OKDHS and thus ran away; (vi) that OKDHS employees lied about Ms. Cray and the children, including in proceedings conducted under oath; (vii) that N.C. "arrived ungroomed, with no shoes, no coat, an[d] in a dirty thin dress" for a supervised visit with Ms. Cray, while B.C. "complained of a person named Brian . . . punch[ing] him in his stomach, that all he [ate was] gummy bear[s] and cereal, and that he had been alone with mean people," and two of the children had hair that had gone "not combed for twenty (20) days;" and (viii) that an OKDHS employee "pushed B.C. down inside a room and closed the door" during a visit to his foster family. Compl. ¶¶ 31, 38, 55, 61, Doc. No. 1.

Plaintiffs press five causes of action—all of which are at issue in the instant motions filed by Governor Stitt and Mr. Brown (the only defendants who appear to have been served): (i) violation of Plaintiffs' substantive due process rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution and made actionable via 42 U.S.C. § 1983, (ii) violation of rights guaranteed by the First, Ninth, and Fourteenth Amendments to the U.S. Constitution as made actionable via § 1983, (iii) violation of the Adoption Assistance and Child Welfare Act of 1980, as amended by the Adoption and Safe Families Act of 1997 ("AACWA"), (iv) violation of Plaintiffs' procedural due process rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution and made actionable via § 1983,[4]

---

[4] Plaintiffs also indicate that their rights to procedural due process under the Fifth Amendment to the U.S. Constitution were violated, but this reference appears to be in error

and (v) breach of federal contractual obligations based on third-party beneficiary status. *See* Compl., Doc. No. 1. Plaintiffs request the entry of a declaratory judgment that their rights have been violated, enjoinment of Defendants from the subjection of the children to practices that violate their rights, additional remedial relief "to ensure Defendants' future compliance with their legal obligations to [the children]," and an award of costs and attorneys' fees. *Id.* at p. 32.

## II.    Pleading standard

Before considering the merits of a case, a court must establish that it has subject-matter jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). The establishment of jurisdiction is a threshold requirement that is "inflexible and without exception." *Id.* at 95 (quotation marks and citation omitted). If the Court determines it lacks subject-matter jurisdiction, it must dismiss the case. *See* Fed. R. Civ. P. 12(h)(3). Generally, Rule 12(b)(1) motions to dismiss "take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). The instant motions are of the former variety. "In reviewing a facial attack on the complaint, a district court must accept the

---

because the Fifth Amendment's due process clause applies to the federal government alone. Plaintiffs' lawsuit only alleges wrongful actions by state actors. To the extent Plaintiffs assert a claim based in the Fifth Amendment, the Fifth-Amendment-based portion of the claim is DISMISSED WITH PREJUDICE. *See Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013) ("The Due Process Clause of the Fifth Amendment applies only to action by the federal government while the Due Process Clause of the Fourteenth Amendment applies to actions by state governments.").

allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. Under Rule 8(a)(2), a pleading is to contain "a short and plain statement of [each] claim showing that the pleader is entitled to relief." While Rule 8(a)(2) "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As such, "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555. In essence, a plaintiff must "nudge[ his] claims across the line from conceivable to plausible" in order to survive a dismissal motion. *Id*. at 570.

To assess the sufficiency of a claim made by a plaintiff, a two-pronged approach is deployed. First, "a judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." *Id.* at 572 (quotation marks and citation omitted). A court need not, however, accept the veracity of "mere conclusory statements." *Iqbal*, 556 U.S. at 678. Second, in light of the well-pleaded factual allegations, the court must determine whether "a complaint states . . . a plausible claim for relief." *Id.* at 679.[5]

---

[5] Plaintiffs cite both the *Twombly*/*Iqbal* standard and the now-abrogated *Conley v. Gibson* standard as being applicable. *See* Resp. 11-12, Doc. No. 14; Resp. 12-13, Doc. No. 15. The Court reminds Plaintiffs' counsel that the "no set of facts" standard for dismissal (from *Conley*) has—per the U.S. Supreme Court—"earned its retirement" and now "is best

## III.    Analysis and discussion

### A.    Plaintiffs' request for monetary relief

It is somewhat unclear whether Plaintiffs seek monetary relief from Governor Stitt and Mr. Brown.  On one hand, Plaintiffs do not make an express request for money damages in their Complaint.  On the other hand, Plaintiffs defend their claims from the arguments against imposition of such damages (*see, e.g.*, Mot. 6, Doc. No. 9; Resp. 16, Doc. No. 15) asserted by Governor Stitt and Mr. Brown—implying that Plaintiffs are, in fact, seeking money damages.  And Plaintiffs assert a breach of contract claim, the traditional remedy for which is money damages.  To the extent they seek the imposition of money damages against Governor Stitt or Mr. Brown, Plaintiffs' claims fail.

The Eleventh Amendment to the U.S. Constitution bars requests for "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law . . . even when the state official is the named defendant." *Papasan v. Allain*, 478 U.S. 265, 278 (1986).  Here, Both Governor Stitt and Mr. Brown have been sued in their official capacities.  And the OKDHS clearly falls within the scope of the Eleventh Amendment immunity afforded to the State of Oklahoma (as, of course, does the State of Oklahoma itself).  *See McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991).  Thus, Governor Stitt and Mr. Brown are protected

---

forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563.  *Hishon v. King & Spalding*, 467 U.S. 69 (1984), likewise has been abrogated in part—notably, for the proposition for which Plaintiffs cite the case. *See Kesel v. Martin*, No. 2:12 CV 139, 2014 WL 888884, at *3 (N.D. Ind. Mar. 5, 2014) (indicating that the *Hishon* standard "is the standard from *Conley* . . . , abrogated by *Twombly* and no longer the law").

from the imposition of money damages against them in their official capacities by the Eleventh Amendment.[6]

Both of Plaintiffs' arguments against the application of Eleventh Amendment immunity fail. Plaintiffs attempt to avoid Eleventh Amendment immunity by pointing the Court to the special-relationship and danger-creation theories for § 1983 liability. *See* Resp. 17-20, Doc. No. 14; Resp. 13-15, Doc. No. 15. But these exceptions are to the otherwise applicable rule for § 1983 claims that "state actors are generally only liable under the Due Process Clause [of the Fourteenth Amendment] for their own acts and not for private violence." *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 917 (10th Cir. 2012) (quoting *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)); *see Dahn v. Amedei*, 867 F.3d 1178, 1180-81 (10th Cir. 2017) ("The special-relationship doctrine provides an exception to the general rule that states aren't liable for harm caused by private actors."). They are not exceptions to the application of Eleventh Amendment immunity. Expectedly, the authorities cited by Plaintiffs regarding these doctrines—*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989); *Dahn*, 867 F.3d 1178; and *Schwartz v. Booker*, 702 F.3d 573 (10th Cir. 2012)—do not address Eleventh Amendment immunity.[7]

---

[6] Exceptions to Eleventh Amendment immunity, such as waiver/consent, have not been put at issue in this case. *See* Okla. Stat. tit. 51, § 152.1.

[7] The Tenth Circuit mentioned Eleventh Amendment immunity in *Schwartz*, but only to indicate that the district court had found certain defendants entitled to such immunity in the suits asserted against them in their official capacities. *See Schwartz*, 702 F.3d at 578-79. That decision was not at issue on appeal. And the district court's decision in *Schwartz* supports the position taken by Governor Stitt and Mr. Brown in this case, not Plaintiffs' position. *Schwartz*'s discussion of qualified immunity (or discussions of qualified

Nor are Plaintiffs' arguments based in *Bosh v. Cherokee County Building Authority*, 2013 OK 9, 305 P.3d 994, *superseded in part by statute as recognized in Barrios v. Haskell County Public Facilities Authority*, 2018 OK 90, 432 P.3d 233, applicable to this case. Plaintiffs have not asserted any claims based in the Oklahoma Constitution or in state law. *See* Resp. 20-21, Doc. No. 14; Resp. 16-17, Doc. No. 15. Thus, Plaintiffs' claims, to the extent they seek monetary damages from Governor Stitt or Mr. Brown in their official capacities, are DISMISSED WITH PREJUDICE.

## B. Plaintiffs' requests for retrospective declaratory relief

The Court next considers whether Plaintiffs' requests for declaratory relief should likewise be dismissed. *Ex parte Young*, 209 U.S. 123 (1908)—under which Plaintiffs propose to proceed—provides certain exceptions to the otherwise-applicable immunity provided by the Eleventh Amendment. But "*Ex parte Young* may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past." *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019) (quotation marks and citation omitted); *see also B.J.G. v. Rockwell Automation, Inc.*, No. 11-CV-262-GKF-TLW, 2012 WL 28077, at *3 (N.D. Okla. Jan. 5, 2012) ("Although the *Ex Parte Young* exception permits federal suits seeking to prospectively enjoin a state official from violating federal law, declaratory

---

immunity by Plaintiffs in their briefs and in other authorities they cite) does not bear on the entitlement of Governor Stitt and Mr. Brown to Eleventh Amendment immunity because the two types of immunity are distinct and require separate analyses. *See Graham v. Murtland*, No. 1:16-CV-149, 2018 WL 259399, at *1 (W.D. Mich. Jan. 2, 2018) ("It is well recognized that personal immunities such as qualified immunity are separate and distinct from sovereign immunity under the Eleventh Amendment." (quotation marks and citation omitted)). Because Defendants have only been sued in their official capacities, qualified immunity is not at issue in this litigation.

relief is not the type of relief designed to prevent ongoing violations of federal law. The Eleventh Amendment does not permit judgments against state officers declaring that they violated federal law in the past." (quotation marks and citations omitted)), *aff'd as modified on other grounds*, 497 F. App'x 807 (10th Cir. 2012) (unpublished). Here, the only declaratory relief sought by Plaintiffs relates to whether their rights already have been violated—i.e., it is retrospective. *See* Compl. at p. 31-32 ("WHEREFORE" paragraph, part (b)), Doc. No. 1. Accordingly, *Ex parte Young*'s exception does not apply, and sovereign immunity bars Plaintiffs' claims for declaratory relief against Governor Stitt and Mr. Brown in their official capacities. Plaintiffs' requests for retrospective declaratory relief against Governor Stitt and Mr. Brown in their official capacities are DISMISSED WITH PREJUDICE.

### C.    Plaintiffs' requests for prospective injunctive relief

The Court must also determine whether Plaintiffs' requests for injunctive relief (which are prospective) should be dismissed. "Under *Ex parte Young*, a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief. In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214 (10th Cir. 2019) (quotation marks and citations omitted)). Thus, unlike the two types of request previously discussed, prospective injunctive relief as to Governor Stitt and Mr. Brown in their official

capacities is not barred by Eleventh Amendment immunity. However, Plaintiffs' requests

for prospective injunctive relief fail for other reasons as to Governor Stitt and Mr. Brown.

### 1. Governor Stitt

Plaintiffs' basis for their claims against Governor Stitt is his ultimate authority over

the actions of executive agencies of the State of Oklahoma. *See* Compl. ¶ 9, Doc. No. 1.

However, sister courts to this Court have found that when such a basis for claims against a

state executive is asserted, plaintiffs lack standing for their claims against a governor. *See*

*D.G. ex rel. Stricklin v. Henry*, 591 F. Supp. 2d 1186, 1190-91 (N.D. Okla. 2008). As

observed by Judge Frizzell in *Stricklin*, Plaintiffs' approach would result in "the Governor

. . . be[ing] subject to inclusion in any and all civil rights action[s] for injunctive relief

against state agencies and departments." *Id.* at 1190.

Constitutional standing requires a plaintiff to "allege that 1) he or she has suffered

an 'injury in fact' that is (a) concrete and particularized and (b) actual of imminent, not

conjectural or hypothetical; 2) the injury is fairly traceable to the challenged action of the

defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be

redressed by the relief requested." *Id.* at 1190-91 (quoting *Tandy v. City of Wichita*, 380

F.3d 1277, 1283 (10th Cir. 2004)). Here—as in *Stricklin*—Plaintiffs have not cognizably

alleged that Governor Stitt has the ability to redress their injuries. Governor Stitt is at least

two levels—if not more—removed from those whose actions Plaintiffs actually complain

of in their Complaint. Plaintiffs do not allege that Governor Stitt may personally intervene

in individual actions of the OKDHS regarding individual cases. Absent more, the Court

finds that Plaintiffs have not met their burden of alleging the existence of Article III

standing for their claims against Governor Stitt in his official capacity. *See id.* at 1191

("The party seeking to invoke federal jurisdiction bears the burden of establishing all three

elements of standing." (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992))).

### 2. Governor Stitt and Mr. Brown

As to Plaintiffs' claims against Mr. Brown, the Court finds Plaintiffs' standing to

exist for the same reasons expressed in *Stricklin*. *See id.* Still, to viably request prospective

injunctive relief from Mr. Brown (and, if standing exists, as to Governor Stitt), Plaintiffs

must state a claim for which injunctive relief can be awarded. *See Hubbard v. Oklahoma*

*ex rel. Okla. Dep't of Human Servs.*, 759 F. App'x 693, 715 n.15 (10th Cir. 2018)

(unpublished). Plaintiffs have not done so.

Plaintiffs' first, second, and fourth causes of action are based in § 1983. To state a

claim under § 1983 against a state executive or against a state agency employee in his

official capacity, a plaintiff must allege that "the [state or] entity's policy or custom . . .

played a part in the violation of federal law"—that is, "there must exist an official policy

or custom that directly cause[d] the alleged injury." *Kadingo v. Johnson*, No. 15-cv-2835-

NYW, 2017 WL 3478494, at *15 (D. Colo. Aug. 14, 2017) (quotation marks omitted)

(quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). Linking the injury and the policy or

custom is key to successfully asserting the claim. A liability theory based on respondeat

superior is insufficient. *See id.*; *see also Iqbal*, 556 U.S. at 676 (indicating that a plaintiff

must "plead that each Government-official defendant, through the official's own individual

actions, has violated the Constitution").

Here, Plaintiffs allege in a conclusory fashion that OKDHS's policies and practices have injured Plaintiffs, but they fail to allege what the policies and practices are or how they have caused injury. Instead, they allege that they were injured by the actions of specific OKDHS employees (who are not defendants in this action), then make the leap to saying that these individual actions were the result of unidentified OKDHS policies or practices. Plaintiffs' allegations are insufficient to state a claim upon which relief may be granted pursuant to § 1983 based on the *Twombly/Iqbal* standard. *See Cox v. Glanz*, No. 11-CV-457-CVE-FHM, 2011 WL 4824383, at *6 (N.D. Okla. Oct. 6, 2011) (indicating that a § 1983 plaintiff asserting an official-capacity claim must "identify an official policy or custom that created a deprivation of [the plaintiff's] rights"). In addition, Plaintiffs have not alleged how Governor Stitt or Mr. Brown was involved in crafting or implementing the policies at issue except in a conclusory all-Defendants-harmed-me manner. Such allegations likewise fail under the *Twombly/Iqbal* standard. *See Iqbal*, 556 U.S. at 676; *Matthews v. Bergdorf*, 889 F.3d 1136, 1148 (10th Cir. 2018) ("A complaint that fails to differentiate wrongful acts among multiple defendants, alleging instead multiple violations by unspecified defendants does not provide the fair notice the law requires." (citing Fed. R. Civ. P. 8)). Accordingly, Plaintiffs have failed to state claims upon which relief may be granted in their first, second, and fourth causes of action, and these causes of action will be DISMISSED WITHOUT PREJUDICE as to Governor Stitt and Mr. Brown in their official capacities.

Plaintiffs' third cause of action alleges violation of the AACWA (via, possibly, § 1983). However, no private right of action exists in the AACWA at least as to Plaintiffs'

claims in this case which do not involve alleged rights of foster parents to payment, so Plaintiffs' claim for violations thereof (either directly or via § 1983) necessarily fails. *See D.G. ex rel. Stricklin v. Henry*, 594 F. Supp. 2d 1273, 1277-78 (N.D. Okla. 2009) ("[T]he AACWA is a federal funding statute that establishes a program of payments to states for foster care and adoption assistance. The typical remedy for state noncompliance with such a statute is not a private cause of action for noncompliance but rather action by the federal government to terminate funds to the state." (citations omitted)); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (indicating that, for a statute to support a cause of action under § 1983, the statute must include "an unambiguously conferred right" and that "it is only violations of *rights*, not *laws*, which give rise to § 1983 actions"). The burden to show that a federal statute supplies an individual right—such that the statute itself or § 1983 can be used as an enforcement mechanism—lies with Plaintiffs (*see Gonzaga Univ.*, 536 U.S. at 284), and Plaintiffs do not even attempt to carry their burden in this case. *See* Resp. 15-16, Doc. No. 14. None of the statutory citations in Plaintiffs' Complaint (*see* Compl. ¶ 87, Doc. No. 1) reference statutory provisions satisfying *Gonzaga University*'s requirement of an "unambiguously conferred right." *See Gonzaga Univ.*, 536 U.S. at 283. Plaintiffs' third cause of action is therefore DISMISSED WITH PREJUDICE as to Governor Stitt and Mr. Brown in their official capacities.

Finally, Plaintiffs' fifth cause of action alleges Defendants' breach of federal contractual obligations based on Plaintiffs' third-party beneficiary status as to such contracts, which Plaintiffs allege were entered into by the State of Oklahoma pursuant to Titles IV-B and IV-E of the Social Security Act. *See* Compl. ¶¶ 94-95, Doc. No. 1.

Plaintiffs have not alleged how they are third-party beneficiaries of the contracts at issue, or even what contracts are at issue. Nor have Plaintiffs alleged what rights they have under the contracts or how such rights have been violated. In their response brief, Plaintiffs merely make a conclusory argument regarding their pleading and rely again on their inapposite qualified-immunity analysis. *See* Resp. 15-16, Doc. No. 14.

Plaintiffs' allegations fail to cross the boundary from conceivable to plausible because they are wholly conclusory. *Twombly*, 550 U.S. at 570 (indicating that a plaintiff must "nudge[ his] claims across the line from conceivable to plausible" in order to survive a motion for dismissal). Moreover, to the extent Plaintiffs mean to allege the plans that the State of Oklahoma has created pursuant to the AACWA to be the contracts at issue, Plaintiffs' fifth cause of action fails for the same reason that Plaintiffs' third cause of action fails—the lack of a private right of action or an individual right enforceable via § 1983 conferred by the AACWA as to the specific claims asserted by Plaintiffs in this case. *See Stricklin*, 594 F. Supp. 2d at 1281 (rejecting a similar third-party-beneficiary-status-based argument). Accordingly, Plaintiffs' fifth cause of action will be DISMISSED WITHOUT PREJUDICE as to Governor Stitt and Mr. Brown in their official capacities.[8]

---

[8] Because the Court finds that Plaintiffs have failed to state claims upon which relief may be granted against either Governor Stitt or Mr. Brown in their official capacities, the Court need not reach their alternative argument that the Court should abstain from interfering in ongoing state-court proceedings (and therefore stay the instant case) pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). Nor does the Court reach the alternative argument offered by Governor Stitt and Mr. Brown that injunctive relief is not available because Plaintiffs have failed to plead that there is a good chance they will be injured in the future.

**IV.     Conclusion**

IT IS THEREFORE ORDERED that the dismissal motions filed by Governor Stitt

[Doc. No. 6] and by Mr. Brown [Doc. No. 9] are GRANTED for the reasons stated herein.

IT IS SO ORDERED this 19th day of September, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE